**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HYATT CORPORATION and**
**AMERISUITES FRANCHISING, L.L.C.,**

        **Plaintiffs,**

-vs-                              Case No. 6:07-cv-1260-Orl-KRS

**EPOCH-FLORIDA CAPITAL HOTEL**
**PARTNERS, LTD.,**

        **Defendant.**

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **HYATT'S MOTION TO DISMISS COUNTERCLAIM (Doc. No. 38)** |
| **FILED:** | **November 16, 2007** |

**I.    PROCEDURAL HISTORY**.

On August 7, 2007, Plaintiffs Hyatt Corporation ("Hyatt") and AmeriSuites Franchising, L.L.C. ("AmeriSuites") (collectively "Plaintiffs") filed a complaint against Defendant Epoch-Florida Capital Hotel Partners ("Florida Capital") for trademark infringement, unfair competition and breach of contract. Plaintiffs allege that Hyatt is the owner of the trademark "AmeriSuites." Pursuant to an agreement between Hyatt and AmeriSuites, AmeriSuites operates and has the exclusive right to franchise others to operate AmeriSuites hotels using Hyatt's proprietary marks and name. Doc. 1 ¶¶ 2, 3.

AmeriSuites entered into a franchise agreement with Florida Capital on or about May 4, 1999, for Florida Capital to operate a hotel in Kissimmee, Florida. *Id*. ¶ 17. Florida Capital allegedly failed to pay certain fees due under the franchise agreement. On August 3, 2007, AmeriSuites notified Florida Capital that the franchise agreement was terminated. *Id*. ¶ 20-25. Plaintiffs allege that after the franchise agreement was terminated, Florida Capital continued to use the proprietary marks and AmeriSuites operating system to operate its hotel without Plaintiffs' consent. *Id*. ¶¶ 29-30.

On September 21, 2007, Florida Capital filed its answer and counterclaim. Doc. No. 17. Before Plaintiffs responded to the counterclaim, Florida Capital filed another answer and amended counterclaim. Doc. No. 36. Florida Capital's amended counterclaim sets forth five counts. Hyatt has filed a motion to dismiss Counts III, IV, and V of the amended counterclaim. Doc. No. 38. Florida Capital has responded to Hyatt's motion. Doc. No. 42. Therefore, the matter is ripe for determination.

## II. ALLEGATIONS OF THE AMENDED COUNTERCLAIM.

Florida Capital alleges that it entered into a franchise agreement with AmeriSuites on May 4, 1999, to operate the Kissimmee hotel. Doc. No. 36, Amended Counterclaim ¶ 4. The initial term of the franchise agreement did not expire until December 21, 2011. *Id.* ¶ 6.

In January 2005, Hyatt completed its purchase of the AmeriSuites' hotel brand from the previous owner. *Id*. ¶¶ 14, 19. After acquiring AmeriSuites, Hyatt allegedly "exercised control over AmeriSuites and directed the operations and decisions related to the AmeriSuites brand and the AmeriSuites franchises. Though technically AmeriSuites continues to exist as a separate legal entity, it is controlled by and completely dependent upon Hyatt." *Id*. ¶ 20.

Within a few months after acquiring AmeriSuites, Hyatt decided it would cease operating the AmeriSuites brand and instead operate the brand "Hyatt Place." *Id*. ¶¶ 22, 23. Qualified AmeriSuites

franchise hotels would, therefore, be rebranded to Hyatt Place. *Id*. ¶ 24. The rebranding process required entering into new Hyatt Place franchise agreements and required owners/operators to make significant renovations to the hotel properties. *Id*. ¶¶ 25-26, 29. Hyatt notified Florida Capital that its Kissimmee hotel was not qualified for conversion to a Hyatt Place, and Plaintiffs have refused to permit conversion of that hotel to a Hyatt Place. *Id*. ¶¶ 40-41.

With the rebranding effort, Hyatt and/or AmeriSuites have diverted support and resources from the AmeriSuites brand to the Hyatt Place brand. *Id*. ¶ 24. Hyatt and AmeriSuites no longer offer AmeriSuites franchises, and they no longer advertise or promote the AmeriSuites brand. *Id*. ¶¶ 32, 33. Florida Capital contends that these actions have undermined the AmeriSuites brand, have materially changed the terms of its franchise agreement, and that AmeriSuites has not complied with the terms of its franchise agreement with Florida Capital. *Id*. ¶¶ 36-39.

Florida Capital alleges that Hyatt knew of the franchise agreement between AmeriSuites and Florida Capital at the time Hyatt purchased AmeriSuites. *Id*. ¶ 65. After acquiring AmeriSuites, Hyatt used its influence as the parent corporation to induce AmeriSuites to breach its franchise agreement with Florida Capital, "with the intent to financially harm Florida Capital." *Id*. ¶ 66. Florida Capital also alleges that Hyatt's direction to AmeriSuites to abandon the AmeriSuites brand and to discontinue support of that brand was "intended to interfere with AmeriSuites' relationship[] with . . . Florida Capital." *Id*. ¶¶ 70-71. Hyatt's conduct was allegedly "willful, oppressive and malicious," and has resulted in damages to Florida Capital. *Id*. ¶¶ 67, 68, 72, 73.

### III. STANDARD OF REVIEW.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to

the plaintiff. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing an entitlement to relief, and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal citations omitted).[1] The Supreme Court has thus "rejected the notion that 'a wholly conclusory statement of claim [can] survive a motion to dismiss whenever the pleadings le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery.'" *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1968). However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic*, 127 S. Ct. 1965 (internal citations omitted).

---

[1] The United States Court of Appeals for the Eleventh Circuit recently interpreted *Bell Atlantic's* Rule 8(a) standard as "whether the 'allegations plausibly suggest[ ] ([and are] not merely consistent with)' a violation of the law." *Davis v. Coca Cola Bottling Co. Consol.*, --- F.3d ----, 2008 WL 314962, at *8 n.43 (11th Cir. Feb. 6, 2008)(quoting *Bell Atlantic*, 127 S. Ct. at 1966).

**IV.  ANALYSIS.**

Hyatt seeks to dismiss Count III as to it, and Counts IV and V, in which it is the sole counter-defendant. As to Count III, the parties stipulate to dismissal of Hyatt as a counter-defendant. Therefore, this portion of the motion requires no further analysis.

As to Counts IV and V, Hyatt contends, first, that these counts are impermissible "shotgun" pleadings because they incorporate all previous counts by reference. It also argues that Counts IV and V fail to state claims upon which relief could be granted. I will address these arguments in turn.

*A.  Shotgun Pleading.*

Hyatt argues that because Florida Capital incorporates each of the preceding counts into Counts IV and V, the amended counterclaim is an impermissible shotgun pleading and should be dismissed. A "shotgun pleading" has been described by the Eleventh Circuit as one in which "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees*, 77 F.3d 364, 366 (11th Cir. 1996).

Although the better practice is not to incorporate preceding counts into following counts, all of the facts alleged in each part of the amended counterclaim arise out of the same series of acts and transactions. As such, the incorporation of preceding counts into following counts does not render the amended counterclaim unintelligible. Accordingly, dismissal of the amended counterclaim as a shotgun pleading is not warranted in this case.

*B.  Counts IV and V.*

Florida Capital alleges in Count IV that Hyatt induced AmeriSuites to breach its contract with Florida Capital. It alleges in Count V that Hyatt tortiously interfered with Florida Capital's business relationship with AmeriSuites. These two claims are often treated identically under Florida law,

except that one involves a contract and the other involves a business relationship. *See Seminole Tribe v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. 4th Dist. Ct. App. 2001).

The elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . [;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (internal quotations omitted).[2] Under Florida law, a party cannot be sued in tort for interfering with its own contract or business relationship. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001). Rather, "the interfering defendant must be a third party, a stranger to the business relationship." *Id*. (internal quotations omitted).

Hyatt argues that Counts IV and V fail to state a claim because Hyatt is not a stranger to AmeriSuites given its alleged control of its subsidiary. Alternately, Hyatt argues that even if it is deemed sufficiently separate from AmeriSuites, its actions were justified because it enjoys a "parent - subsidiary privilege" to cause its subsidiary to breach a contract with a third party.

Hyatt did not own AmeriSuites at the time AmeriSuites entered into the franchise agreement with Florida Capital. Therefore, it was a "stranger" to this contract at its inception. Hyatt does not cite a single Florida precedent that a parent corporation is not a "stranger" for the purposes of interfering with its subsidiaries' business relationships. Hyatt recognizes, albeit only in a footnote, that the Florida Supreme Court has held that a parent corporation may be liable for tortious

---

[2] The elements of the tort of intentional interference with a contract has been described similarly as follows: "1) the contract; 2) the wrongdoer's knowledge thereof; 3) his intentional procurement of its breach; 4) the absence of justification; and 5) damages." *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th Dist. Ct. App. 1999).

interference with its subsidiaries' or affiliates' business relationships, albeit in a different factual context than the present case. Doc. No. 38 at 7 n. 2 (citing *Gossard v. Adia Serv., Inc.*, 723 So. 2d 182, 185-86 (1998)). Accordingly, while *Gossard* might not ultimately control the outcome in this case, it provides a sufficient basis to preclude dismissal of Counts IV and V on the theory that a parent corporation can never tortiously interfere with the preexisting business relationship and contracts of its recently acquired subsidiary.[3]

Even if Hyatt had a privilege as the parent corporation of AmeriSuites to interfere with the franchise agreement, this privilege is not absolute. The privilege may be overcome by showing that Hyatt acted with a purely malicious purpose or used wrongful means to induce the breach of contract or to interfere with the business relationship. *See, e.g., KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1327 (11th Cir. 2004); *Ernie Haire Ford,* 260 F.3d at 1294 n. 9.

Hyatt argues that Florida Capital did not plead that Hyatt acted from pure malice or that Hyatt employed improper means. Florida Capital alleges that Hyatt used its influence as the parent corporation to induce AmeriSuites to breach the franchise agreement with Florida Capital, "with the intent to financially harm Florida Capital." Doc. 36 ¶ 66; *accord id*. ¶ 71. It further alleges that "Hyatt's conduct was willful, oppressive and malicious." *Id*. ¶ 68; *accord id.* ¶ 73. It also alleges that Hyatt represented that it would continue to honor the Amerisuites' franchise obligations, but failed to do so. *Id.* ¶ 38. These allegations are sufficient to allege malicious purpose or wrongful means assuming that Hyatt establishes that it had a qualified privilege to interfere with the preexisting franchise agreement between AmeriSuites and Florida Capital.

---

[3] Despite Hyatt's assertion that the decision in *Gossard* has been criticized, it appears to still be valid law in Florida.

**IV.   CONCLUSION**.

For the foregoing reasons, it is **ORDERED** that Hyatt's Motion to Dismiss Counterclaim, doc. No. 38, is **GRANTED in part and DENIED in part**. It is further **ORDERED** that Hyatt is dismissed from Count III of the amended counterclaim. It is also **ORDERED** that Hyatt shall file its answer to the amended counterclaim on or before March 3, 2008.

**DONE** and **ORDERED** in Orlando, Florida on February 20, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE